UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEANN GRAHAM,

    Plaintiff,

v.

CITY OF ELKHART, et al.,

    Defendants.

Case No. 3:21-CV-495 JD

## OPINION AND ORDER

Plaintiff DeAnn Graham, proceeding *pro se*, sued the Elkhart Police Department, City of Elkhart, and Prosecutor Vicki Becker. At the outset, the Elkhart Police Department is not a separate, suable entity from the City of Elkhart and therefore not a proper defendant in this case.[1] As for Defendants the City of Elkhart and Ms. Becker, her claims are wide-ranging and recount a series of distinct events.

In 2018, Ms. Graham was evicted on grounds that she kept an unregistered dog in violation of property management policy, who also bit the property manager. At various other times Ms. Graham lost her unemployment benefits, child support payments, and Family and Medical Leave Act payments. Her minor daughter was sexually assaulted, and her oldest daughter was arrested multiple times.

Ms. Graham alleges that the basis for the eviction was a false report of the dog bite, and that Defendants violated the Fair Housing Act by failing to stop her eviction or assist her due to racial bias. Ms. Graham also alleges that the loss of various payments and failure to assist her

---

[1] *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (holding that under Indiana state law a city's police department is not a separate entity capable of suing or being sued). The Court therefore will dismiss all claims against the Elkhart Police Department.

daughters were all motivated by Defendants' racial animus. Additionally, Ms. Graham brings an Equal Protection Clause claim. Finally, she brings negligence and defamation claims under Indiana state law.

Defendant City of Elkhart moved for dismissal for failure to state a claim. The Court grants the City's motion to dismiss regarding all federal claims because Ms. Graham has not alleged that she was injured as a result of a discriminatory City policy with the force of law to sustain a claim under § 1983.

Defendant Ms. Becker moved for a more definite statement, and in the alternative for the Court to screen Ms. Graham's complaint. The Court grants Ms. Becker's motion for a more definite statement because the complaint is ambiguous regarding Ms. Becker's involvement in this series of events. Ms. Graham's state law claims remain pending.

**A. Ms. Graham's Allegations**

Ms. Graham alleges that Defendants the City and prosecutor Becker were involved in a series of distressing events for her family. The Court construes *pro se* pleadings liberally and takes all well-pleaded allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court relies on the allegations that Ms. Graham lays out in her complaint as well as the supplemental documents she filed with her complaint (DE 1-1) to discern a background.

Ms. Graham was evicted in 2018 from her rental home in a housing complex run by UMH property management. (DE 1 at 8–9.) The underlying incident for the eviction was her ownership of an unregistered pit bull that bit the property manager, Ms. Karen Wills. (*Id.*) Ms. Graham argues that her dog was properly registered with UMH as an emotional support animal, that she did not breach her lease, and that UMH destroyed the relevant documentation. (*Id.* at 7–

8.) She also alleges that there was no dog bite at all and the report was false as shown by the later dismissal of the ticket she received for the incident. (*Id.*) The responding police officer is alleged to have falsified the ticket, or generally not helped Ms. Graham, out of racial bias in violation of the Fair Housing Act. (*Id.* at 8; DE 15 at 2.) Ms. Graham also contacted the City's Human Relations Department and did not receive help. (DE 1-1 at 28; DE 15 at 2.) In her response to the City's motion to dismiss, Ms. Graham clarifies that she alleges UMH, not the City, violated the Fair Housing Act. (DE 15 at 2.) The Court notes that UMH is not a party to this suit. It is unclear how or if Ms. Becker was involved.

Ms. Graham next recounts her loss of unemployment benefits, child support payments, and Family and Medical Leave Act (FMLA) payments. (DE 1 at 10.) Each, Ms. Graham argues, was due to racial discrimination against her. (*Id.*) Her claims seem to be based on lack of assistance and general interference in each of the three discontinued payments by the City and Ms. Becker. Ms. Graham alleges that the unemployment office discriminated and retaliated against her for making special requests. (*Id.*) Unemployment in Indiana appears to be administered through the state (IND. CODE § 22-4-1-2 (2014)) as Ms. Graham acknowledges (DE 1 at 6; DE 1-1 at 2.)

With respect to her discontinued child support payments, Ms. Graham alleges that the Elkhart Superior Court did not provide her a fair hearing. (DE 1 at 6, 10.) Regarding FMLA payments for taking care of her daughter, Ms. Graham seems to allege that the City has generally interfered with her receipt of payments, or at least not assisted in her recovery of them. (*Id.* at 10.) Ms. Graham does not discuss her employer other than noting she lost her job at Coca-Cola (*id.*), and Coca-Cola is not a party to this suit.

Finally, in her complaint Ms. Graham describes events related to two of her daughters. First, she describes her youngest daughter's sexual assault, which she alleges was not investigated by the EPD out of racial bias. (*Id.* at 9, 11.) The City and Ms. Becker also allegedly did not follow up to this incident due to racial bias. (*Id.* at 11.) Ms. Graham next argues that her oldest daughter's arrest was due to racial discrimination. (*Id.*) Ms. Graham clarifies in her response to the City's motion to dismiss that there are several separate arrests of her oldest daughter that were racially motivated, with involvement by the EPD and Ms. Becker. (DE 15 at 4.)

The City moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (DE 9.) The City addresses Ms. Graham's Fair Housing Act claim only and argues that Ms. Graham's claim is barred by the applicable statute of limitations, or alternatively, that Ms. Graham failed to properly plead an existence of a discriminatory City policy under 42 U.S.C. § 1983. (DE 10.)

Defendant Ms. Becker moved for a more definite statement, or in the alternative, to screen the complaint. (DE 17.) Ms. Becker argues that she does not have fair notice of claims against her, and in the alternative that the complaint does not state a claim against her and should be dismissed. (DE 18.)

**B. Standard of Review**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143,

1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### C. Discussion

#### (1) *Claims against the Police Department*

Under Indiana state law a city's police department is not an entity separate from the City capable of suing or being sued. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). The Court therefore dismisses all claims against the Elkhart Police Department.

#### (2) *Claims against the City*

Ms. Graham's claims against the City for violations of federal law are brought pursuant to 42 U.S.C. § 1983. Section 1983 permits individuals to bring private suit for deprivation of federally guaranteed rights against state actors. *Burger v. County of Macon*, 942 F.3d 372, 374 (7th Cir. 2019). A local government is liable under Section 1983 for its policies that cause constitutional torts. *McMillian v. Monroe County*, 520 U.S. 781, 784 (1997). A local government

may not be sued for an injury inflicted by its employees; "[i]nstead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy" inflicts the injury that the government is responsible as an entity. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Courts consider whether government officials are final policymakers for the local government in particular areas. *McMillian*, 520 U.S. at 784–85. When making this determination, courts have held that an official's local government policymaking authority is a question of state law. *Id.* at 786. The Court now turns to Ms. Graham's federal claims against each Defendant.

"Plaintiffs who seek to impose liability on local governments under § 1983 must [allege] that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691). To establish an official policy or custom, a plaintiff must plead that her constitutional injury was caused "by (1) the enforcement of an express policy of the [municipality], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467–68 (7th Cir. 2010) (quoting *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001)).

Ms. Graham has not alleged that the City had any involvement in her loss of benefits. But even if the complaint could be construed to somehow implicate the City, Ms. Graham has not identified an express City of Elkhart policy that caused her various injuries, nor has she identified a person with final policymaking authority that is responsible. Ms. Graham has also not pled facts alleging a widespread practice that is "so permanent and well-settled as to constitute custom or usage with the force of law." *Wragg*, 604 F.3d at 467. Overall, Ms. Graham

seems to accuse the City of general racial discrimination because it failed to assist her at each turn. While the Court is sympathetic to the hardships Ms. Graham has experienced, nothing she alleges suggests a widespread policy of discrimination at the City.

In her set of claims surrounding her eviction proceedings, Ms. Graham alleges a violation of the Fair Housing Act. Yet, she clarifies in her response brief that she alleges UMH, not the City, violated the Fair Housing Act. (DE 15 at 2.) UMH is not a party to this case. For her claim of a false police report related to her eviction, Ms. Graham has not alleged that the City has a policy of racial discrimination. Therefore, the Court dismisses both her Fair Housing Act claim and false police report allegation.

Next, regarding her loss of child support payments and unemployment benefits, although Ms. Graham did call the mayor's office and received no assistance (DE 1 at 9, 11), she has not alleged that the City had any authority over the administration of these services. In fact, she alleges that Elkhart Superior Court was involved in her discontinuation of child support payments and that the state of Indiana was involved in her loss of unemployment benefits, not the City. Further, regarding FMLA payments for taking care of her daughter, civil enforcement actions may be brought only against employers for violations of the Act. Family and Medical Leave Act, 29 U.S.C. §§ 2614–17 (2008). Ms. Graham's employer is not a party to this suit. But even if the City was involved in administering her child support, unemployment, or FMLA payments, Ms. Graham has not alleged a City policy of discrimination. Therefore, Ms. Graham's claims against the City for racial discrimination related to child support, unemployment, and FMLA are dismissed.

Lastly, the Court addresses Ms. Graham's claim under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment states that

"[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. To state a facially plausible equal protection claim under *Monell*, the factual allegations in Ms. Graham's complaint must allow the Court to draw a reasonable inference that the City had an established policy or practice of intentional discrimination. *See McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011). Even construing the complaint generously, Ms. Graham has not alleged a widespread City practice with force of law that injured her, instead referring only to general, conclusory statements of "systemic racism." (DE 1 at 6.) The Court therefore dismisses the Equal Protection Clause claim against the City.

Ms. Graham is also alleging state law claims of negligence and defamation against the City. Generally, the Court does not decide state law claims unless they accompany federal law claims. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("In the usual case in which all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims."). Therefore, the Court will address Ms. Graham's state law claims against the City once the fate of the remainder of the federal claims—against Ms. Becker—is decided.

**(3)** *Claims against Ms. Becker*

Under Federal Rule of Civil Procedure 12(e), a party may move for a more definite statement of a complaint which is so vague or ambiguous that the party cannot reasonably prepare a response. A complaint must provide a short and plain statement of the claim and does not need detailed factual allegations, but the plaintiff must allege facts that raise a right to relief above a speculative level. *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007). A complaint also must provide a defendant fair notice of the claims against them. *Id.* While *pro se* complaints

are to be more liberally construed than complaints from represented parties, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that does not free a *pro se* plaintiff from having to provide basic notice of the claims to the opposing party. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

Ms. Becker's name appears in Ms. Graham's complaint in the middle of a long list of government officials alleged to have violated the law. (DE 1 at 6.) A reference to the prosecuting attorney is next made alongside allegations of the police and City's deprivation of Ms. Graham's rights and equal protection. (DE 1 at 12.) Ms. Graham also provided an exhibit showing a map and an apparent visit to the prosecutor's office about two years prior. (DE 1-1 at 19.) It is not clear which claims are brought against Ms. Becker. The Court finds that Ms. Becker's request for a more definite statement is reasonable to enable her to respond intelligently to her alleged role in the events that Ms. Graham describes. *See Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 849 (7th Cir. 2018) ("Rule 12(e), rather than a judicial demand for fact pleading, is the right way to ask plaintiffs to lay out details that enable the defendants to respond intelligently and the court to handle litigation effectively."). The Court therefore grants Ms. Becker's motion for a more definite statement.

### (4) *Claims on Behalf of Ms. Graham's Daughters*

Ms. Graham also describes several events involving her daughters. As a *pro se* litigant, Ms. Graham may not represent other parties in court. *Elustra v. Mineo*, 595 F.3d 699, 704 (7th Cir. 2010). This rule is designed to protect the interests of the represented party because a party may be bound, or have rights waived, by their legal representative. *Id.* at 706 (quoting *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) (per curiam)). This concern is even stronger in the context of a minor. *Id.* While there are some exceptions to this rule (for example,

parents may bring *pro se* social security claims on behalf of their children), there is not yet such an exception for a lawsuit based on § 1983 in the Seventh Circuit. *J.S. v. Manchester Cmty. Sch. Corp.*, No. 19-CV-421, 2019 WL 7283285, at *4 (N.D. Ind. Dec. 23, 2019) (citing *Elustra*, 595 F.3d at 705).

Therefore, Ms. Graham cannot represent her daughter on her claim that she was sexually assaulted and Defendants failed to investigate. Nor can she represent her other daughter regarding her claims related to multiple police arrests. Ms. Graham may continue to represent herself in any claims that she has arising from these events.

**D. Conclusion**

For the foregoing reasons, the Court:

- GRANTS Elkhart Police Department's motion to dismiss (DE 9) and dismisses the Elkhart Police Department from this case;

- GRANTS in part Defendant City of Elkhart's motion to dismiss (DE 9) and dismisses all federal claims against the City of Elkhart (*id.*);

- GRANTS Defendant Becker's motion for a more definite statement (DE 17); and

- DISMISSES WITHOUT PREJUDICE any claims on behalf of Ms. Graham's daughters.

Ms. Graham's state law claims remain pending.

Ms. Graham has until January 7, 2022, to file a more definite statement that addresses any claims against Ms. Becker. Ms. Graham should be mindful that her statement must be limited to claims against Ms. Becker and should clearly state what, when, and where Ms. Becker did to violate her rights or otherwise incur liability. The Court cautions Ms. Graham that, if she

does not respond by the deadline, the Court will dismiss her federal claims with prejudice and without further notice and relinquish jurisdiction over her state law claims.

SO ORDERED.

ENTERED: December 2, 2021

                                                        /s/ JON E. DEGUILIO
Chief Judge
United States District Court